IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAVID ROBERT KENNEDY, GK-9993, )
    Petitioner, )
     )
    v. ) 2:11-cv-542
     )
MARIROSA LAMAS, et al., )
    Respondents. )

MEMORANDUM and ORDER

Mitchell, M.J.:

    David Robert Kennedy, an inmate at the State Correctional Institution at Rockview, has presented a petition for a writ of habeas corpus. For the reasons set forth below the petition will be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability will be denied.

    Kennedy is presently serving a life sentence imposed following his conviction, by a jury, of first degree murder. This sentence was imposed on November 21, 2005 at No. CP-02-CR-571-2001 in the Court of Common Pleas of Allegheny County.[1]

    An appeal was taken to the Superior Court of Pennsylvania in which the questions raised were:

1. Whether the trial court erred in denying Kennedy's motion to suppress and in allowing admission of the tainted testimony of witness, Ruth Beck, the improperly hypnotized Commonwealth witness?

2. Whether the trial court erred by refusing to admit a Pennsylvania State Police Report containing the statement of William Miller, who was deceased at the time of trial, as: (1) said report qualified as a business record exception to the hearsay rule; and (2) Mr. Miller's statement was also a present sense impression exception to the hearsay rule?

3. Whether the trial court erred in failing to dismiss the information filed against Kennedy as a violation of his Due Process where the 23-year pre-trial delay was improper, unreasonable, and resulted in actual prejudice to Kennedy?

---
[1] See: Petition at ¶¶1-6.

1

4. Whether the trial court erred in allowing the expert testimony of Dr. Rozin where: 1) no expert report was provided to the defense in violation of Pa.R.Cr.P. 573(B)(1)(e); 2) his opinion was based upon facts not supported by the record; 3) no evidence was introduced that the extrinsic facts upon which Dr. Rozin based his opinion were of the type normally relied upon by pathologists; 4) he read portions of an inadmissible report into the record; and 5) he did not testify his expert opinion was within a reasonable degree of medical certainty.[2]

On February 26, 2007, the Superior Court affirmed the judgment of sentence.[3] Leave to appeal to the Pennsylvania Supreme Court was not sought.[4]

A post-conviction petition was filed on March 12, 2008.[5] As a result, on August 1, 2008, the petitioner's right to file a petition for allowance of appeal in the Supreme Court was granted.[6] In his petition, Kennedy only raised the first three of the grounds he had raised in the Superior Court, apparently abandoning the fourth issue.[7] On December 31, 2008, leave to appeal was denied.[8]

On February 19, 2009, Kennedy filed a post-conviction petition which was dismissed on April 14, 2009. An appeal to the Superior Court was filed in which the issues presented were:

1. Whether attorney Manifesto was ineffective for failing to preserve the claim that: the trial court erred in allowing the expert testimony of Dr. Rozin when:
   (1) No expert report was provided to the defense in violation of Pa.R.CR.P. 573(B)(1)(E);
   (2) His opinion was based upon facts not supported by the record and no evidence was introduced that the extrinsic facts upon which Dr. Rozin based his opinion were of the type normally relied upon by pathologists;
   (3) He read parts of an inadmissible report into the record;
   (4) He did not testify his expert opinion was within a reasonable degree of medical certainty?

2. Whether the Court of Common Pleas erred and/or abused its discretion in failing to hold an evidentiary hearing on one or more of defendant's claims for post-conviction relief?[9]

---

[2] See: Answer of the Commonwealth at p.711. All record references to the answer will refer to the "Bates" number pages.
[3] Id. at pp.854-873.
[4] See: ¶9(g) of the petition.
[5] See: Answer of the Commonwealth at p.19.
[6] Id. at p.955.
[7] Id. at p.964.
[8] Id. at p.958.
[9] Id. at p.1213.

On December 18, 2009, the Superior Court affirmed the denial of post-conviction relief.[10] A petition for allowance of appeal raising these same issues was filed[11] and on May 10, 2010 leave to appeal was denied.[12]

In the instant petition, executed on April 19, 2011, Kennedy contends he is entitled to relief on the following grounds:

    A. Petitioner was denied his Constitutional right to due process, in that the state Superior Court [denied] relief on unreasonable determination of facts when ruling the petitioner's Constitutional rights, protected under the Sixth Amendment of the United States Constitution, and Article 1, § 9 of the Pennsylvania Constitution, when ruling that the testimony of government witness, Ruth Beck was: (1) admissible when said memory of said testimony was unnecessary[ily] enhanced by hypnosis, by an unqualified hypnotist, who kept no records of any type concerning the conduct of the hypnotic sessions; (2) Ruth Beck's testimony related only to her prehypnosis observations; (3) the government failed to establish the proper foundation for admission of her testimony, depriving the court of an opportunity to find her testimony was prejudicial[ly] affected by the conduct of an unqualified hypnotist who maintained no records of the hypnotic sessions; and (4) the state court did not require the government to provide the proper foundation of the hypnotist's qualifications of the manner in which the hypnotic session was conducted including the statements made by the hypnotist during the hypnotic sessions: (1) inadmissible/improperly bolstered the credibility of government witness Ruth Beck's testimony… (2) Ruth Beck's testimony related solely to her pre-hypnosis observations…(3) government failed to establish a foundation for the admission of Ruth Beck's trial testimony, depriving the trial court an opportunity to find her testimony was prejudicially affect[ed] by the conduct of unqualified hypnotist who maintained no records of the hypnotic sessions… the state courts applied an unreasonable determination of facts in finding that the government was not required to provide the proper foundation that hypnotist Gimigliano was qualified in the scientific evidence field; (ii) the states court excused the government from establishing the foundation of the manner in which the hypnotic session was conducted, including statements made by the hypnotist during the hypnotic session.

    B. Petitioner was denied his Constitutional rights protected under the Sixth and Fourteenth Amendments of the United States Constitution , and Article 1, §9 of the Pennsylvania Constitution, in that the state courts applied an unreasonable determination of facts, and unreasonable application of law, in finding that Pennsylvania state police report containing the statement of

---

[10] Id. at pp.1288-1297.
[11] Id. at p.1304.
[12] Id. at p.1342.

3

deceased witness, William Miller, was not admissible as (1) qualified as a business record exception to the hearsay rule (2) said statement was an exception as a present sense impression to the hearsay rule.

C. Petitioner was denied his Constitutional rights protected under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution, and Article 1, §9 of the Pennsylvania Constitution, in that the state court applied an unreasonable application of established law, and unreasonable determination of facts, in finding petitioner was no[t] prejudiced … by the government's inordinate delay in arrest.[13]

The background to this prosecution is set forth in the February 26, 2007 Memorandum of the Superior Court:

> This case involves the March 17, 1977 disappearance of Debbie Capiola, of Findlay Township, a seventeen-year [-]old high school student. The case remained unsolved for many years. Debbie left her home on a back road in Findlay Township at about 7:45 a.m. that morning to walk to the bus stop. Her brother, who usually accompanied her, stayed home that day because he was sick. The school bus driver, Helen Kennedy, testified that Debbie was not at the bus stop at 8:02 a.m., when the bus arrived to pick her up… Kathleen Juip, Debbie's mother, stated that she left her residence at about 8:10 a.m. As she was driving down the road, she saw her daughter's books and her nurse's smock on the side of the road. Thinking that Debbie had dropped them running for the bus, Ms. Juip picked up the items and took them to the high school. The school secretary paged Debbie, but she did not respond and Ms. Juip knew that something was wrong. She contacted the police and the search for Debbie began… Eight days later on March 25, 1977, Debbie's purse, containing her wallet and her shoes were found near Blue Lake in a remote area of Washington County… Her jeans were tied around her neck, there were buttons missing from her blouse, and her bra was torn…
>
> The [Appellant], who drove a car similar to a vehicle that had been observed in the area by several witnesses, was interviewed on March 31, 1977. The [Appellant's] license plate matched the partial plate numbers that had been provided to the police. The [Appellant] denied any involvement with the murder…
>
> An autopsy was performed by Dr. Ernest Abernathy, who is now deceased. The autopsy protocol and the autopsy photographs were reviewed by Dr. Leon Rozin. Dr. Rozin opined that the cause of death was ligature strangulation. There was no trauma to the victim's vagina, cervix, or rectum, but the oral cavity smear was positive for spermatozoa…

---

[13] See: Petitioner's Memorandum in support of petition at pp.13-32.

4

Several criminologists examined the swab samples taken from Ms. Capiola and her clothing. Spermatozoa and a small stain of blood were found on the jeans and spermatozoa was … found on the oral slides…

From 1977 to 1999, this unsolved case was investigated by many members of the Pennsylvania State Police, but no suspect was charged. In 1999, Trooper Rebecca Loving reviewed the case and wondered if the spermatozoa that was... found could be tested for DNA. In May 2000, Trooper Loving shipped Ms. Capiola's jeans and the oral slides to Cellmark Laboratory, along with the autopsy report and criminologists' reports. The following month she learned that Cellmark had a profile from the jeans and that further testing could be done. On November 3, 2000, the police obtained a search warrant for the [Appellant's] blood. The blood was taken to Cellmark on November 8, 2000. Based on the results, the [Appellant] was arrested on December 14, 2000 and charged with homicide…

Kathryn Colombo, a laboratory analyst with Cellmark Diagnostics in Maryland, testified that Cellmark is a private laboratory engaged in DNA identification testing in criminal cases. She stated that she examined the victim's jeans and obtained a DNA profile from the sperm that she found on the jeans. When she received the [Appellant's] blood sample a few months later, she extracted DNA from the blood. The DNA profile from the jeans was exactly the same as the DNA profile from the [Appellant's] blood. She indicated that there is a 1 in 1.4 trillion chance that someone else's DNA would be the same as the [Appellant's] DNA. In her opinion, with a reasonable degree of scientific certainty, "the donor of the DNA obtained from the blood sample labeled [Appellant's] is the source of the DNA obtained from the sperm fraction on the jeans."[14]

It is provided in 28 U.S.C. §2254(b) that:

An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

This statute represents a codification of the well-established concept which requires that before a federal court will review any allegations raised by a state prisoner, those allegations must first be presented to that state's highest court for consideration. Preiser v. Rodriguez, 411 U.S. 475 (1973); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996).

---

[14] See: Answer of the Commonwealth at p.854-856.

It is only when a petitioner has demonstrated that the available corrective process would be ineffective or futile that the exhaustion requirement will not be imposed. Preiser v. Rodriguez, supra.; Walker v. Vaughn, 53 F.3d 609 (3d Cir. 1995).

If it appears that there are available state court remedies, the court must determine whether a procedural default has occurred. If a procedural default has occurred, the court must determine whether cause or prejudice exists for the default, or whether a fundamental miscarriage of justice would result from a failure to consider the claims. Carter v. Vaughn, 62 F.3d 591 (3d Cir. 1995).

In construing § 2254(d)(1), the Court in Williams v. Taylor, 529 U.S. 362, 412-413 (2000) stated:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.
> We must thus decide whether the state supreme court's "adjudication of the claim ... resulted in a decision that was *contrary to*, or involved *an unreasonable application* of, clearly established Federal law, as determined by the Supreme Court of the United States...
>
> A state court adjudication is "contrary to" Supreme Court precedent if it results from the application of "a rule that contradicts the governing law set forth" by the Supreme Court or is inconsistent with Supreme Court decision in a case involving "materially indistinguishable" facts ... "A state court decision fails the 'unreasonable application' prong only 'if the court identifies the correct governing rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case or if the state court either unreasonably extends a legal principle from the Supreme court's precedent to a new context where it should not apply or

unreasonably refuses to extend the principle to a new context where it should apply...(citations omitted).

That is, the state court determination must be objectively unreasonable. Renico v. Lett, 130 S.Ct. 1855 (2010).

Petitioner's first issue here concerns the admission of prosecution witness Ruth Beck's post-hypnotic testimony. In his direct appeal Kennedy contended that the trial court erred in admitting that testimony by failing to apply the guidelines promulgated by the Pennsylvania Supreme Court in Commonwealth v. Smoyer, 505 Pa. 83, 89-90 (1984) to assure the reliability of such testimony. Initially, we observe that this issue was presented in petitioner's direct appeal as one raising solely issues of Pennsylvania and not federal law.[15] As a matter of state evidentiary law, the issue is not subject to review here. Waddington v. Sarausad, 129 S.Ct. 823, 832, n.5 (2009); Taylor v. Horn, 504 F.3d 416 (3d Cir.2007), cert. denied 129 S.Ct. 92 (2008). Additionally, in permitting her testimony, the trial court limited Ms. Beck's testimony to information which she had provided to the police prior to hypnosis.[16]

To satisfy the exhaustion requirement, the state courts must be put on notice that federal claims are being raised. Baldwin v. Reese, 541 U.S. 27 (2004). In the instant case, the petitioner only argued this issue as a matter of state law, and since he can no longer return to state court to raise the issue in a federal context, a procedural default has occurred. In Coleman v. Thompson, 501 U.S. 722,750 (1991), the Court held:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice.

Because no such showing is made here, the petitioner has failed to exhaust the available state court remedies and there is no showing made that by not invoking a procedural default a fundamental miscarriage of justice will occur, no further consideration of this issue is warranted here. In addition because Ms. Beck's testimony was limited by the court to pre-hypnotic statements and was corroborated by other witness, this is a non-issue.

---

[15] See: Id. at pp.725-733.
[16] See: Suppression hearing transcript of November 14, 2005 at pp.3, 56-61 Additionally, two other witnesses testified at trial that they had seen a vehicle matching the description of petitioner's car near the crime scene.

7

Kennedy's second argument concerns the denial of admissibility of deceased state trooper William Miller's police report. This issue was raised in petitioner's direct appeal. Specifically, petitioner's alleged error because upon investigation, Miller learned that Kennedy's car was at his work location at a time when others related that a car meeting its general description was observed near the crime scene. In objecting to the admissibility of this matter the Commonwealth argued that the time frames were not identical.[17] As a general proposition, alleged evidentiary errors occurring in state court do not provide a basis for federal habeas corpus relief. Estelle v. McGuire, 502 U.S. 62 (1991); Jimenez v. Walker, 458 F.3d 130, 147 (2d Cir.2006). In the instant case, the evidence was excluded on independent state grounds and does not provide a basis for relief here. Coleman v. Thompson, supra.

The petitioner's final argument is that the charges should be dismissed due to unreasonably delay in charging him with the crime. The record reveals that the crime occurred on or about March 17, 1977 and the petitioner was not arrest until December 14, 2000, or over twenty-three years later. This issue was raised in petitioner's direct appeal to the Superior Court. Citing to the trial court, the Superior Court noted:

> A criminal defendant must show that the passage of time caused actual prejudice and that the prosecution lacked sufficient and proper reasons for postponing the prosecution in order to establish a due process violation… In this case, the delay in charging the [Appellant] was occasioned by the fact that the sophisticated DNA testing necessary to either exculpate or inculpate the [Appellant] simply did not exist in 1977 or for twenty plus years thereafter. When the case was transferred to Trooper Loving in 1999, she immediately began to investigate the possibility to link someone to the crime via the use of DNA testing. She acted very quickly and diligently. Moreover, the Commonwealth did not delay the prosecution of the [Appellant] in order to gain a "tactical advantage"… rather, it delayed the prosecution until it had ample evidence to prove the [Appellant's] guilty. In addition, the [Appellant] has failed to demonstrate that specific witnesses, who are now unavailable or deceased, would have offered exculpatory information if the charges had been filed in the early or mid 1990's. As such, th[e trial c]ourt […] den[ied] the [Appellant's] Motion to Dismiss.[18]

That is, the petitioner now argues that the passage of twenty-three years between the commission of the crime and his prosecution violated due process.

In United States v. Lovasco, 431 U.S. 783 (1977), the Court held that delay occurring as a result of investigation and not designed to gain a tactical advantage does

---

[17] Id. at p.733.
[18] Id. at p.869.

not violate due process. In the instant case, although the petitioner had initially been the focus of investigators, it was not until years later that the use of DNA testing came into vogue and could be applied to this prosecution. Thus, this claim does not provide a basis for relief here.

Additionally, in urging his delay prejudice argument, the petitioner contends that despite his request for the introduction of statements of deceased witnesses, the trial court excluded that evidence. (HT 11/14/05 at pp.91-92). In writing on this decision, the trial court stated:

> [T]he Defendant alleges that this Court erred in denying the Motion for Admission of Statements of Deceased Witnesses. The Motion is based upon the argument that the charges should have been dismissed due to the unnecessary delay in filing them, which has resulted in the Defendant's inability to call certain witnesses to testify because they are deceased or their whereabouts are unknown. This is basically the same argument that was presented to and denied by Judge Bigley in 2001 with a different title, which again raised the "law of the case" issue. Further, introducing police reports containing the statements of persons that the police interviewed as substantive evidence would fly in the face of the most basis rule of evidence --- hearsay is inadmissible. The statements of the witnesses were not sworn to by the witnesses. The statements were not tape recorded or videotaped. The witnesses did not review the police reports and adopt the report as their actual statement. And, perhaps most importantly, the Commonwealth would not have an opportunity to cross-examine the witnesses as to the statements and their recollection of the events set forth in the police reports. Clearly, if the Commonwealth sought to introduce this type of evidence, the defense would vehemently object and that objection would be sustained. Accordingly, the Court finds that the Motion was properly denied.[19]

The trial court clearly acted to bar any prejudice by denying the admissibility of evidence regarding any earlier statements made by unavailable witnesses whose reliability could not be challenged. As a matter of state evidentiary ruling, this allegation is not subject to review here. Jimenez v. Walker, 458 F.3d 130 supra.

While the defense alleged that such statements would be exculpatory, their exclusion resulted in the prosecution relying on the DNA evidence.[20] Since Pennsylvania does not have a statute of limitations for murder prosecutions, 42 Pa.C.S.A.§5551, as a matter of state law the prosecution was not time barred. Thus, the fact that the delay was

---

[19] Id. at p.694 (footnote omitted).
[20] Id. at pp.606-607.

not designed to gain a tactical advantage, but rather due to the emerging new science of DNA testing demonstrates that its use did not violated due process.

Accordingly, Kennedy's conviction was not secured in a manner contrary to federal law as determined by the Supreme Court or as a result of an unreasonable application of Supreme Court precedent, and for this reason is not entitled to relief here.

For this reason, the petition of David Robert Kennedy for a writ of habeas corpus will be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability will be denied.

An appropriate Order will be entered.

ORDER

AND NOW, this 22nd day of June, 2011, for the reasons set forth in the foregoing Memorandum, the petition of David Robert Kennedy for a writ of habeas corpus is dismissed and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability is denied.

s/ Robert C. Mitchell<br>
United States Magistrate Judge